IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 08–cv–00110–EWN–MEH


WILLIAM N. MCKENNA, IV, a Colorado resident,

     Plaintiff,

v.

CDC SOFTWARE, INC., a Delaware corporation,

     Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

     This is an employment and contract case.  Plaintiff William N. McKenna, IV, alleges that

Defendant CDC Software, Inc., wrongfully dismissed him from his employment as a sales

account executive with its wholly-owned subsidiary, Ross Enterprises.  Defendant counterclaims

for a breach of contract by Plaintiff for violation of a "Proprietary Information Agreement."

This matter is before the court on Defendant's "Motion to Change Venue," filed on February 21,

2008.  Jurisdiction is premised upon 28 U.S.C. §§ 1332 and 1367.

## FACTS

### *1.*    *Factual Background*

     Plaintiff was a resident of Colorado prior to his employment with Defendant.  He

remained a resident until at least April 1, 2008.  (*See* Def.'s Notice of Removal, Ex. A-1 ¶¶ 1,

34–35 [Pl.'s Compl.] [filed Jan. 16, 2008]; Def.'s Answer, Defenses, and Countercl. ¶ 34 [filed

Jan. 24, 2008] [hereinafter "Def.'s Answer"]; Pl.'s Resp. in Opp'n to Def.'s Mot. to Change Venue, Ex. 2 [McKenna Decl.], Ex. 3 [Swanson Decl.] [filed Apr. 1, 2008] [hereinafter "Pl.'s Resp."].) Defendant now disputes Plaintiff's current state of residency. (*See* Def.'s Supplemental Br. in Supp. of Its Mot. to Change Venue Based on Newly Discovered Evidence in Pl.'s Dep. at 2-3 [filed Sept. 4, 2008] [hereinafter "Def.'s Supplemental Br."].) However, for reasons explained below, the court remains unpersuaded by Defendant's argument that its "newly discovered evidence" impacts the current matter. Defendant is a corporation incorporated in Delaware, with its principal place of business in Atlanta, Georgia. (Def.'s Answer ¶ 2; Def.'s Mot. to Change Venue, Ex. A ¶ 4 [Goodman Aff.] [filed Feb. 21, 2008].)

Between April 17, 2006, and August 29, 2007, Plaintiff was employed by one of Defendant's wholly-owned subsidiaries — first, by Vis.align, Inc., and then by Ross Enterprises. (Def.'s Answer ¶ 2; Def.'s Mot. to Change Venue, Ex. A ¶ 5 [Goodman Aff.].) Vis.align, Inc. is incorporated in Delaware with its principal place of business in King of Prussia, Pennsylvania. (Def.'s Mot. to Change Venue, Ex. A ¶ 10 [Goodman Aff.].) Ross Enterprises is incorporated in Delaware with its principal place of business in Atlanta, Georgia. (*Id.*, Ex. A ¶ 11 [Goodman Aff.].) In early February 2006, Plaintiff was transferred from Vis.align to Ross Enterprises. (Pl.'s Compl. ¶ 5; Def.'s Mot. to Change Venue, Ex. A ¶ 5 [Goodman' Aff.].) Defendant and its subsidiaries are at least partially integrated, sharing a common Human Resources department. (*See* Mem. of Law in Supp. of Def.'s Mot. to Change Venue at 2 [hereinafter "Def.'s Br."] [filed Feb. 21, 2008].) Effective August 29, 2007, Defendant fired Plaintiff purportedly for insubordination and poor sales performance. (*See* Pl.'s Compl. ¶¶ 34–35; Def.'s Answer ¶ 34.)

Plaintiff argues that this explanation is pretext, and that he was dismissed in retaliation for his objections to Defendant's allegedly illegal activities. (*See* Pl.'s Compl. ¶¶ 38, 40.)

Plaintiff alleges that during his tenure at Ross Enterprises, Defendant's managing personnel treated him unfairly and pressured him to commit acts of fraud on its customers. (*See generally* Pl.'s Compl. ¶¶ 7–33.) According to Plaintiff, this behavior was motivated by the desire to improve the company's financial statistics in the lead-up to the company's initial public offering. (*See id.* ¶¶ 20, 22, 24.) Plaintiff claims that he attempted to address the issue with different members of Defendant's management. (*Id.* ¶¶ 19, 23, 27, 33.) Management purportedly responded with resistance and the eventual firing of Plaintiff. (*Id.* ¶¶ 20, 23, 30, 34–40.) Defendant denies these allegations or other wrongdoing. (*See* Def.'s Answer ¶¶ 7–41.)

Plaintiff's allegations implicate Defendant's current and former employees, some of whom continue to reside or work in the Northern District of Georgia. For example, Ross Enterprises' Sales Director, Sharon Rodriguez, who resides and works in the Northern District of Georgia, figures prominently in the alleged malfeasance. (*See* Pl.'s Compl. ¶¶ 7–34; Def.'s Br. at 5.) Defendant's Human Resources Department, which houses various records relevant to this case, is located in the Northern District of Georgia. (*See* Def.'s Br. at 5.) However, at least some of Defendant's current and former employees, all of the allegedly defrauded clients, and other potential witnesses live outside the Northern District of Georgia. (*See* Def.'s Br. at 5–6; Pl.'s Resp. at 9–10, Ex. 4 [Isaacs Decl.], Ex. 5 [Jones Decl.].)

During his tenure with Defendant, Plaintiff signed an agreement that restricted his use and distribution of Defendant's proprietary information. (*See* Def.'s Mot. to Change Venue, Ex.

A at 7–15 [Proprietary Info. Agreement].)  The "Proprietary Information Agreement"

("Agreement"), apparently a form contract drafted by Defendant, contains two clauses that are

relevant to this case.  A clause entitled, "Not an Employment Contract," states that the

"Agreement confers no guarantee of continuing employment for any fixed term and . . . nothing

in this agreement shall interfere with [Plaintiff's] right or [Defendant's] right to terminate

[Plaintiff's] employment at will at any time for any reason whatsoever, with or without good

cause or any cause."  (*Id.*, Ex. A at 11 [Proprietary Info. Agreement].)  Another clause entitled,

"Governing Law; Consent to Personal Jurisdiction," reads:

> This Agreement will be governed by the laws of the State of Georgia without
> regard to the choice of law provisions thereof. [Plaintiff] hereby expressly
> consent[s] to the personal jurisdiction of the state and federal courts located in
> Georgia for any lawsuit filed there against [Plaintiff] by [Defendant] arising from
> or relating to this Proprietary Information Agreement.

(*Id.*)  Plaintiff signed the Agreement on December 13, 2006.  (*Id.*, Ex. A at 12 [Proprietary Info.

Agreement].)

While working for Ross Enterprises, Plaintiff hired Christine Swanson,[1] a Colorado

resident, to serve as his administrative assistant.  (*See* Pl.'s Resp. at 10.)  As the basis for its

counterclaim, Defendant alleges that Plaintiff shared proprietary information with Ms. Swanson

in violation of the Agreement.  (Def.'s Answer ¶¶ 94–97.)  Defendant further alleges that

Plaintiff still possesses some of Defendant's proprietary information.  (*Id.* ¶ 98.)  Plaintiff denies

_____

[1] The parties disagree about whether Ms. Swanson is Plaintiff's common-law wife.  (*See*
Pl.'s Resp. at 6–7; Def.'s Reply at 8.)  This issue is not material to the present matter, so the
court makes no finding regarding it.

both these assertions advanced in Defendant's counterclaim.  (Pl.'s Reply to Def.'s Countercl. ¶¶ 15–17 [filed Feb. 13, 2008].)

**2.      *Procedural History***

On November 29, 2007, three months afer his termination, Plaintiff filed this action in Colorado state District Court, asserting a single claim of "Discharge in Violation of Public Policy."  (*See* Pl.'s Compl.)  On January 16, 2008, Defendant removed the case to this court on diversity grounds.  (*See* Def.'s Notice of Removal.)  On January 24, 2008, Defendant filed an answer which included a counterclaim for breach of contract against Plaintiff, alleging violations of the Agreement.  (*See* Def.'s Answer ¶¶ 8–17.)

Neither party contests this court's personal jurisdiction over the parties or argues that venue is improper.  Rather, on February 21, 2008, Defendant filed a motion to change venue under Title 28 of the United States Code section 1404(a) ("section 1404[a]") asking this court to exercise its discretion to transfer the case to the U.S. District Court for the Northern District of Georgia.  (*See* Def.'s Mot. to Change Venue.)  Defendant argues that transfer is appropriate because: (1) the case could have been filed in the Northern District of Georgia initially; (2) convenience of the parties and witnesses demands transfer; and (3) transfer would promote the interest of justice.  (*See* Def.'s Br. at 8–14.)  On April 1, 2008, Plaintiff filed his response to the motion to change venue.  (*See* Pl.'s Resp.)  On April 16, 2008, Defendant replied.  (*See* Def.'s Reply in Supp. of Its Mot. to Change Venue [hereinafter "Def.'s Reply"] [filed Apr. 16, 2008].)

On April 1, 2008, Plaintiff filed a motion to amend his complaint adding a second claim for relief and additional facts that he argues are also relevant to this motion.  (Pl.'s Mot. to

Amend Compl. Pursuant to F.R.C.P. 15(c) [sic] [filed Apr. 1, 2008].)  This court referred the

motion to Magistrate Judge Michael E. Hegarty who denied it without prejudice.  (*See* Minute

Order [filed Apr. 3, 2008].)  Plaintiff thereafter filed a renewed motion to amend his complaint.

(*See* Pl.'s Renewed Mot. to Amend Compl. Pursuant to F.R.C.P. 15[a] [filed Apr. 4, 2008].)

Again this court referred the motion to Magistrate Judge Hegarty.  This time the magistrate judge

recommended that the motion be granted.  (Recommendation on Pl.'s Mot. to Amend Compl.

[filed May 8, 2008].)

On May 20, 2008, Defendant filed an objection to the magistrate judge's

recommendation.  (Def.'s Objections to Mag. Judge's Rec. on Pl.'s Renewed Mot. to Amend

Compl. [filed on May 20, 2008].)  This court's review of Magistrate Judge Hegarty's

recommendation is still pending.  However, since the motion to change venue impacts progress

in this case, (*see, e.g.*, Order on Def.'s Mot. to Stay at 4 [filed Apr. 17, 2008] [recommending

limiting discovery until the motion to change venue is resolved]), and Plaintiff's argument

against transfer of venue can be made and won without looking to the amended complaint, the

court will proceed.  The court is reassured by the fact that the amended complaint only makes

Plaintiff's case against transfer stronger.  As a result, the court approaches the motion to change

venue without consideration of the facts or claims in the proposed amended complaint.

## ANALYSIS

### 1.     *Change of Venue Principles*

Under section 1404(a): "For the convenience of parties and witnesses, in the interest of

justice, a district court may transfer any civil action to any other district or division where it

might have been brought." 28 U.S.C. § 1404(a) (2006). While this decision is left largely to the discretion of the presiding district court, such discretion is exercised within established guidelines. *See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 [1988]).

A three-part inquiry guiding a district court's inquiry derives directly from the language of the statute. A threshold question asks whether the action initially "might have been brought" in the proposed transferee court. *See Hoffman v. Blaski*, 363 U.S. 335, 342–44 (1960); *Chrysler Credit Corp.*, 928 F.2d at 1515. If the answer is no, so ends the analysis, for transfer would be impermissible. *See Hoffman*, 363 U.S. at 344 (prohibiting transfer where plaintiff lacked the right to sue, independent of the defendant's wishes, in the proposed transferee court, regardless of what convenience and justice required). However, if the action could have been brought in the proposed transferee court, the presiding court then embarks on a "flexible and multifaceted analysis" considering how the convenience of the parties and witnesses will be best served and what the interest of justice demands. *See Stewart Org.*, 487 U.S. at 30–31.

The Tenth Circuit provides a detailed list of considerations for a district court to consult in deciding whether to order a transfer:

> [1] the plaintiff's choice of forum; [2] the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; [3] the cost of making the necessary proof; [4] questions as to the enforceability of a judgment if one is obtained; [5] relative advantages and obstacles to a fair trial; [6] difficulties that may arise from congested dockets; [7] the possibility of the existence of questions arising in the area of conflict of laws; [8] the advantage of having a local court determine questions of local law;

and, [9] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Tex. Gulf Sulfur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967) (adopting into the section 1404[a] analysis, factors from the common law *forum non conveniens* context) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 [1947]). The analysis is undertaken on an individualized, fact specific basis, focusing on issues of "convenience and fairness." *Chrysler Credit Corp.*, 928 F.2d at 1516 (quoting *Stewart Org.*, 487 U.S. at 29 [1988]).

The existence of a forum-selection clause complicates this analysis. As a general rule, section 1404(a), a valid federal statue regarding federal court procedure, preempts state laws and governs the change of venue analysis. *See Stewart Org.*, 487 U.S. at 26–28, 31–32. Because the ultimate decision on whether or not to transfer a case is dictated by federal law, district courts are to follow Congress's mandate that "multiple considerations govern transfer within the federal court system." *Id.* at 31. A forum-selection clause, while not given the near-dispositive effect it receives in other contexts, *see Milk 'N' More, Inc. v. Beavart*, 963 F.2d 1342, 1344 (10th Cir. 1992) ("[F]orum selection clauses are 'prima facie valid and should be enforced' unless shown to be unreasonable.") (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 [1972]), is a "significant factor" in this analysis. *Stewart Org.*, 487 U.S. at 29, 31. Valid forum-selection clauses weave their way into a traditional section 1404(a) analysis, requiring a district court to evaluate the convenience and fairness of a proposed transfer in light of the forum-selection clause. *Id.* at 29.

Matters complicate when a court ventures to interpret the scope of a particular contract clause. *Cf. id.* at 35 (Scalia, J., dissenting) (noting that "the [*Stewart* majority's] description begs the question: what law governs whether the forum-selection clause is a *valid* or *invalid* allocation of any inconvenience between the parties"). The majority opinion in *Stewart* is of little help in this regard. It states only that "a forum-selection clause *such as the parties entered into in this case* will be a significant factor that figures centrally in the district court's [section 1404(a)] calculus." *Id.* at 29 (emphasis added). The clause at issue in *Stewart* required that "any appropriate state or federal district court located in the Borough of Manhattan, New York City, New York, shall have exclusive jurisdiction over any case or controversy arising under or in connection with this Agreement and shall be a proper forum in which to adjudicate such case or controversy." *Id.* at 24. *Stewart* offers no guidance, however, on: (1) which forum-selection clause are those that fall under the purview of its directive; (2) under what law a court should make this determination; or (3) how to treat those clauses that differ in some significant way.

Since it impacts the rest of the discussion, determining which law governs the interpretation is the first question that needs to be resolved. Forum-selection contracts adjudicated in federal courts implicate both state substantive law regarding contract interpretation and federal procedural law regarding judicial administration. As a result several courts have struggled with which law to apply. *See Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997) (listing various courts). The Tenth Circuit has yet to make a definitive statement regarding the matter. *See, e.g.*, *K & V Scientific Co. v. BMW*, 314 F.3d 494, 497 (10th Cir. 2002) (accepting district court's decision to use federal common law because

parties did not object); *Excell, Inc.*, 106 F.3d at 320 (declining to decide because "no material discrepancies" existed between the two possibilities); *SBKC Service Corp. v. 1111 Prospect Partners, L.P.*, 105 F.3d 578, 581 (10th Cir. 1997) (avoiding the matter altogether by finding clause at issue was not a "forum-selection clause").

The Agreement requires that it "be governed by the laws of the State of Georgia . . . ." (*See* Def.'s Mot. to Change Venue, Ex. A at 11 [Proprietary Info. Agreement].)  This clause appears to be valid, *see CS-Lakeview at Gwinnett, Inc. v. Simon Prop. Group, Inc.*, 659 S.E.2d 359, 361 (Ga. 2008), and the parties do not argue otherwise.  Therefore, either Georgia law or federal common law will govern the interpretation of the agreement in this case.  Since there is no material difference between the outcome of this matter under either law, the court foregoes the difficult task of parsing the choice of law rules.  *Cf. Excell, Inc.*, 106 F.3d at 321; *SBKC Service Corp.*, 105 F.3d at 581 (foregoing decision on which law governs "because the result would be the same in either case").

Turning now to the task of identifying which forum-selection clauses are sufficiently similar to the one at issue in *Stewart*, thus falling under the purview of the Court's directive, the court looks at a clause's relevance — whether it covers the claim at issue — and its insistence — whether it mandates or only permits transfer.  If a forum-selection clause is not relevant to the claim at issue — in other words, if the terms of the clause do not cover the particular claim — then the clause will not support transfer under section 1404(a) and the clause need not factor into a section 1404(a) analysis.  *See Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 692 (8th

Cir. 1997); *S-Fer Int'l, Inc. v. Paladion Partners, Ltd.*, 906 F. Supp. 211, 213–14 (S.D.N.Y.

1995); *Berrett v. Life Ins. Co. of the Sw.*, 623 F. Supp. 946, 948–49 (D. Utah 1985).

Courts also distinguish forum-selection clauses based on their insistence that a claim be

brought before a particular tribunal or tribunals. Mandatory clauses require actions to be

litigated in specific tribunals and nowhere else, while permissive clauses allow parties to bring

actions in specific tribunals but do not prohibit such actions from being brought elsewhere.

*Excell, Inc.*, 106 F.3d at 321; *see K & V Scientific Co.*, 314 F.3d at 497, 498.

The Tenth Circuit has provided illustrations distinguishing mandatory from permissive

forum-selection clauses. As an example of a mandatory clause, the court offers: "[V]enue for

any dispute arising under or in relation to this contract shall lie only in the Seller's state and

county." *See Excell*, 106 F.3d at 321 (citing *Thompson v. Founders Group Int'l*, 886 P.2d 904,

910 [Kan. Ct. App. 1994]). As an illustrative permissive clause, the court cites: "The parties

agree that in the event of litigation between them, Franchise Owner stipulates that the courts of

the State of Michigan shall have personal jurisdiction over its person, that it shall submit to such

personal jurisdiction, and that venue is proper in Michigan." *Id.* (quoting *Utah Pizza Serv. v.

Heigel*, 784 F. Supp. 835, 837 [D. Utah 1992]).

Although Georgia courts explicitly reject the permissive-mandatory dichotomy, *see

Carbo v. Colonial Pac. Leasing Corp.*, 592 S.E.2d 445, 447 (Ga. Ct. App. 2003), they arrive at

the same place by distinguishing between "forum[-]selection clauses which dictate where suit

must be brought, and those that provide only the parties' consent to jurisdiction in the event that

proceedings are instituted in a particular forum," *Murray v. Education Res. Inst.*, 612 S.E.2d 23,

24 (Ga. Ct. App. 2005) (quoting *Carbo*, 592 S.E.2d at 447). *See also Lease Finance Group v. Delphi, Inc.*, 596 S.E.2d 691, 692 (Ga. Ct. App. 2004).

Returning to the forum-selection clause in *Stewart*, the operative language states that particular courts "*shall have exclusive jurisdiction* over *any case or controversy* arising under or in connection with this Agreement and *shall be a proper forum* . . . ." 487 U.S. at 24 (emphasis added). This clause fits squarely into the mandatory forum-selection clause category. Therefore, when *Stewart* required that "a forum-selection clause such as the parties entered into in this case" be treated as a significant factor in a section 1404(a) analysis, it appears to be referring to what other courts have labeled a mandatory forum-selection clause. *See, e.g.*, *Excell*, 106 F.3d at 321.

Once the type of forum-selection clause is determined, the next task is to ascertain its impact on a section 1404(a) analysis. In practice, mandatory forum-selection clauses are given great weight in many section 1404(a) analyses. *See REO Sales Inc. v. Prudential Ins. Co. of Am.*, 925 F. Supp. 1491, 1493 (D. Colo. 1996) (discussing how forum-selection clauses "will often carry the day when making a section 1404(a) determination"). The impact of a permissive forum-selection clause is less certain. In some courts, permissive forum-selection agreements in favor of the forum state where the case was filed carry just as much weight as mandatory forum-selection clauses. *See, e.g.*, *Stateline Power Co. v. Kremer*, 404 F. Supp. 2d 1373, 1380 (S.D. Fla. 2005); *Haagen-Dazs Shoppe Co. v. Born*, 897 F. Supp. 122, 125 (S.D.N.Y. 1995). Other courts have held that a permissive forum-selection agreement is entitled to less weight in a section 1404(a) analysis. *Micro-Assist, Inc. v. Cherry Commc'ns, Inc.*, 961 F. Supp. 462, 466

(E.D.N.Y. 1997).  In an unpublished opinion, the Tenth Circuit expressed approval for this latter approach.  *King v. PA Consulting Group, Inc.*, 78 F. App'x 645, 649–50 (10th Cir. 2003).

2.    ***Evaluation of Claims***

a.    ***Whether Case Could Have Been Brought in Transferee Court***

Defendant seeks a transfer of venue from Colorado to the Northern District of Georgia. The parties do not contest the threshold question under section 1404(a): whether "it might have been brought" in the Northern District of Georgia in the first instance.  28 U.S.C. § 1404(a) (2006); *see Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).  The court notes that Defendant's principal place of business is in that district which supports the propriety of venue and personal jurisdiction there.  *See* 28 U.S.C. § 1391(c) (2006) (stating that for a corporation, venue is proper "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced"); *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 794 n.16 (10th Cir. 1998) (stating that a corporation's principal place of business "clearly provides" courts in that state with personal jurisdiction over the corporation).  It is not altogether clear that venue and personal jurisdiction are equally settled with regard to Plaintiff by virtue of his contacts with the district or the Agreement.  However, since Plaintiff does not raise the issue and neither side presents the necessary facts for the court to make a reasoned decision, the court does not pursue it any further.

b.    ***Impact of the "Governing Law; Consent to Personal Jurisdiction" Clause***

In order to establish the parameters of the section 1404(a) analysis in this matter, the court must determine the relevance and insistence of the "Governing Law; Consent to Personal

Jurisdiction" clause from the Agreement. (*See* Def.'s Mot. to Change Venue, Ex. A at 11 [Proprietary Info. Agreement].) The clause is expressly limited in scope to those actions "filed [in Georgia] against [Plaintiff] by [Defendant] arising from or relating to this Proprietary Information Agreement." (*Id.*) Plaintiff's wrongful termination claim was not filed by Defendant against Plaintiff in a court in Georgia and it arose out of their general employment relationship, not the Agreement. The terms of the Agreement make it clear that it is "Not an Employment Contract." (*Id.*) Therefore, the Agreement and its "Governing Law; Consent to Personal Jurisdiction" clause are not relevant to Plaintiff's wrongful termination claim, and ordinarily would not factor into a section 1404(a) determination.

Defendant insinuates that the compulsory nature of its counterclaim in combination with the "Governing Law; Consent to Personal Jurisdiction" clause should militate toward transferring the entire case into a court in the State of Georgia. (*See* Def.'s Br. 6–7.) The clause is clearly relevant to Defendant's counterclaim. However, the question becomes whether the existence of the counterclaim allows the clause to impact the entire case.

A court cannot separate individual claims of an overall case under section 1404(a); it must transfer the entire case or nothing at all. *See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518–19. Therefore, the court must decide whether a forum-selection clause relevant to only part of a case can impact the section 1404(a) determination for the entire case. The court holds it can. However, since the forum-selection clause is relevant only to part of the case, the court holds that it should receive diminished weight in the analysis. This is necessary to avoid undesirable strategic behavior by defendants, for granting it full weight could

encourage frivolous counterclaims in order to unduly impact a change of venue motion.
Therefore, the court holds that the "Governing Law; Consent to Personal Jurisdiction" clause, is
a factor, albeit a diminished one, in the section 1404(a) analysis.

Guided by precedent, the court holds that the clause at issue in the instant matter is a
permissive forum-selection clause entitled to diminished effect in the transfer analysis. *Compare
King v. PA Consulting Group, Inc.*, 78 F. App'x 645, 649 (10th Cir. 2003) (finding "[t]his
agreement and all matters arising in connection with it shall be governed by the law of the State
of New Jersey and shall be subject to the jurisdiction of the New Jersey Court" to be a
permissive clause), *with Excell*, 106 F.3d at 321 (finding "[j]urisdiction shall be in the State of
Colorado, and venue shall lie in the County of El Paso, Colorado" to be a mandatory forum-
selection clause). *Cf. also King*, 78 F. App'x at 649 (noting that the Tenth Circuit "rejected the
idea that submission-to-jurisdiction plus choice-of-law equals mandatory designation-of-venue"
[citing *K & V Scientific Co. v. BMW*, 314 F.3d 494, 501 (10th Cir. 2002)]).

This holding satisfies the Tenth Circuit's instruction that a court carry out the parties'
intent embodied in a venue provision. *SBKC Service Corp. v. 1111 Prospect Partners, L.P.*, 105
F.3d 578, 582 (10th Cir. 1997) ("[T]he controlling factor in governing enforcement of a venue
provision in any agreement by confining venue to a specific court is whether the parties intended
to commit the actions to that court to the exclusion of all others."). The Agreement is signed
only by Plaintiff, Plaintiff has no apparent rights to enforce under it, and it is limited to actions
"filed [in Georgia] against [Plaintiff] by [Defendant] arising from or relating to this Proprietary
Information Agreement." (*See* Def.'s Mot. to Change Venue, Ex. A at 11–13, 15 [Proprietary

Info. Agreement].)  Therefore, it is counterintuitive to suggest that the parties intended the Agreement to limit Plaintiff's choice of forum for a wrongful termination claim.  In fact, it stands to reason that Defendant used the permissive language in the "Governing Law; Consent to Personal Jurisdiction" clause in order to leave open the possibility of enforcing the Agreement in some other venue of its choosing.  *Cf. Murray v. Education Res. Inst.*, 612 S.E.2d 23, 24 (Ga. Ct. App. 2005) (allowing party that benefits from consent to jurisdiction clause to bring an action to enforce the underlying agreement elsewhere).  Therefore, giving the "Governing Law; Consent to Personal Jurisdiction" clause the full impact it would receive if it were relevant to Plaintiff's wrongful termination claim would in essence provide Defendant more than it bargained for in an agreement it drafted.  *Cf. Carbo v. Colonial Pac. Leasing Corp.*, 592 S.E.2d 445, 447 (Ga. Ct. App. 2003) (noting that ambiguities in a forum-selection agreement are to be construed against the drafter); *Milk 'N' More, Inc. v. Beavart*, 963 F.2d 1342, 1346 (10th Cir. 1992) (same).

Therefore the "Governing Law; Consent to Personal Jurisdiction" clause in this case as a permissive forum-selection clause that impacts only part of the case is doubly discounted in its effect.  However, it will still weigh in the court's decision of whether to grant a transfer of this case under section 1404(a).

### c.    *Evaluating Convenience to Parties and Witnesses*

Invariably, most lawsuits involve some measure of inconvenience to the parties and witnesses.  Section 1404(a) is not intended to eliminate this inconvenience altogether or to merely shift it from one party to another.  *See Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992); *Hirsch v. Zavaras*, 920 F. Supp. 148, 151 (D. Colo. 1996).  Rather it serves as a "judicial

housekeeping measure" passed by Congress "to counteract the inconveniences that flowed from the venue statutes by permitting transfer to a convenient federal court." *Ferens v. John Deere Co.*, 494 U.S. 516, 522–23 (1990); *see also Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).

In applying the *Texas Gulf Sulphur* factors to a section 1404(a) analysis, the court notes the great weight that is given generally to a Plaintiff's choice of forum. *See Tex. Gulf Sulphur*, 371 F.2d at 147 ("[U]nless the evidence and the circumstances of the case are strongly in favor of the transfer the plaintiff's choice of forum should not be disturbed."); *see also Scheidt*, 956 F.2d at 965 (10th Cir. 1992) (quoting *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 [10th Cir. 1972]). This court gives the choice of forum less weight where a plaintiff or the underlying case has no meaningful connection to the forum state. *See Wood v. Houghton Mifflin Harcourt Publ'g Co.*, No. 07–CV–01516–DME–BNB, 2008 WL 2113344, at *2 (D. Colo. May 19, 2008).

In this case, Plaintiff lived in Colorado for a substantial period of time prior to and after filing this case and he worked out of his home in Colorado during the entire time he was employed by Defendant. (*See* Pl.'s Compl. ¶ 2; Def.'s Supplemental Br., Ex. A at 3–7 [Excerpts from Pl.'s Dep.].) Therefore, the connection to Colorado in this case is meaningful and Plaintiff's choice of forum will be given deference. [2]

---

[2] In the days immediately preceding the scheduled hearing on this motion, Defendant submitted a supplemental brief to which it attached portions of Plaintiff's deposition. (*See* Def.'s Supplemental Br., Ex. A at 3–15 [Excerpts from Pl.'s Dep.].) Defendant argues that Colorado no longer has a meaningful connection to this case because in the past several months, Plaintiff and

A defendant seeking a venue change generally bears the burden of proving that the current venue is inconvenient. *See Chrysler Credit Corp.*, 928 F.2d at 1515. Although this preference is not dispositive, *see Cargill, Inc. v. Prudential Ins. Co. of Am.*, 920 F. Supp. 144, 147 (D. Colo. 1996), Defendant still bears a heavy burden in proving a sufficient amount of inconvenience or injustice to overcome the preference. As mentioned above, since the Agreement contains a permissive forum-selection clause relevant to Defendant's counterclaim, it will receive some consideration in the section 1404(a) determination. Where a relevant mandatory forum-selection clause is in play, "the burden for all practical purposes shifts to the nonmovant to demonstrate that the forum should not be respected." *REO Sales Inc. v. Prudential Ins. Co. of Am.*, 925 F. Supp. 1491, 1492 (D. Colo. 1996). However, the clause in this case with its considerably reduced impact will only somewhat mitigate Defendant's burden of proof.

Plaintiff has chosen Colorado as the venue in which to assert his claim. Defendant must still overcome the preference for Plaintiff's choice by sufficiently demonstrating that the transfer is necessary for the convenience of the parties and witnesses and the interest of justice. If it cannot, then its motion to change venue will be denied.

---

Ms. Swanson have spent a majority of their time in Florida. (*See* Def.'s Supplemental Br. at 2–3.) Plaintiff has not had the opportunity to respond to this newly presented evidence. However, the deposition provides insufficient basis for finding that Plaintiff and this case no longer have a meaningful connection with Colorado. Therefore, this new evidence, assuming it is properly before the court, does not change the conclusion in this matter.

In arguing its position, Defendant focuses primarily upon the second and third *Texas Gulf Sulphur* factors: the accessibility of witnesses and other sources of proof, including availability of compulsory process to insure attendance of witnesses; and the cost of making the necessary proof. (*See* Def.'s Br. at 8–14.) Defendant argues that, at best, only two of all the potential witnesses in this case reside in Colorado, while a "majority" reside in Georgia. (*See* Def.'s Reply at 10.) Furthermore, Defendant argues that the cost and inconvenience involved in transporting its files and its employees, some of whom are high level executives, to Colorado provides enough inconvenience to support transfer to the Northern District of Georgia. (*See* Def.'s Br. at 12, 14.)

Defendant identifies four current employees which it would have to transport from Georgia to Colorado for this case. (Def.'s Reply at 10–11.) Should a transfer be ordered, Plaintiff would bear the cost of transporting two witnesses, himself and Ms. Swanson, from Colorado to Georgia. In other words, Defendant must transport two more witnesses than Plaintiff if the case remains in Colorado. While this does militate in favor of a transfer, it does so only slightly. *Cf. Tex. E. Transm'n Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 568 (10th Cir. 1978) ("[P]roximity to the courthouse is only one factor to consider in a [section] 1404[a] motion."). One non-party witness, Defendant's former employee, Mr. Raghupatahy, also resides in the Northern District of Georgia. Although it is not clear at this point in the case who will be called as witnesses, the parties' filings indicate that potential party and non-party witnesses reside in Florida, Illinois, Indiana, New York, North Carolina, Ohio, Utah, and Virginia, as well as Quebec, Canada. (*See* Def.'s Mot. to Change Venue, Ex. A ¶¶

19–25, 30 [Goodman Aff.]; Pl.'s Resp. at 9–10, Ex. 4 [Isaacs Decl.], Ex. 5 [Jones Decl.].) The parties do not alert the court to any facts demonstrating that one forum is decidedly more convenient than the other to these witnesses individually or as a group, so convenience to these witnesses does not appear to be served by transfer.

The ability of either court to obtain testimony of witnesses in this case does not appear to be an issue. Four of the potential witnesses in the Northern District of Georgia are Defendant's employees thus should not require compulsory process. There is no indication that this court will have any difficulty in obtaining the testimony of the fifth potential witness residing in that district, Mr. Raghupatahy. Furthermore, this court will be able to better ensure attendance by Ms. Swanson, the key witness with regard to Defendant's counterclaim, who is no longer an employee of Plaintiff. (*See* Pl.'s Resp., Ex. 3 [Swanson Decl.].) As for the witnesses located outside Colorado and Georgia, there is no indication that one court is better suited to the task of obtaining their testimony than the other. As a result, the issue of ensuring witnesses attendance does not assist Defendant in meeting its burden.

Defendant asserts that "all of the relevant documents *within [Defendant's] custody and control* are located in the Northern District of Georgia." (Def.'s Br. at 14 [emphasis added].) This statement is not particularly helpful to the current disposition, for the standard does not require the court to consider only the location of evidence in one party's custody or control. Rather the court must consider the location of all the evidence. Defendant does state that its customer files as well as its personnel and benefit files are located at its corporate headquarters in Atlanta, Georgia. (*See* Def.'s Reply, Ex. B ¶¶ 4–5 [Bruce Aff.].) However, it gives no

indication of how the fact that it possesses all of its own files at a particular office will impact the overall convenience of trying this case in Colorado. Without further detail regarding what these files are, how many there are, why they would not otherwise have to be transmitted to Plaintiff in Colorado as a matter of discovery, how they relate in terms of volume or importance to other evidence in the case, or in what way the burden of transmitting these documents is significant, the court cannot find that this assertion serves to meet Defendant's burden of proving inconvenience. *Cf. Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992) (finding blanket assertions about the burdens of producing unspecified documents to be deficient in proving inconvenience); *Wolf v. Gerhard Interiors, Ltd.*, 399 F. Supp 2d 1164, 1168 (D. Colo. 2005) (finding that "speculative" assertions about documentary evidence does not shift the balance toward transfer). Therefore, the location of documents does not weigh heavily, if at all, in Defendant's favor on the question of convenience. *See Wood v. Houghton Mifflin Harcourt Publ'g Co.*, No. 07–CV–01516–DME–BNB, 2008 WL 2113344, at *3 (D. Colo. May 19, 2008) (noting that the location of documentary evidence "only influences the balance slightly").

Defendant has raised no issue with respect to the fourth *Texas Gulf Sulphur* factor, the enforceability of a judgment if one is obtained. However, logic dictates that Defendant would in fact be in a better position to collect on its counterclaim in Colorado, the state where Plaintiff has resided and his assets are likely to be located. Although Plaintiff will be forced to transfer any obtained judgment to Georgia, this calculation was likely rendered prior to his filing of this case and will not factor greatly into the convenience question. Thus, this factor weighs slightly in favor of the District of Colorado.

*Texas Gulf Sulphur* identified two factors implicating choice of law considerations. First is the possibility of existence of questions arising in the area of conflict of laws. The second is the advantage of having a local court determine questions of local law.

The difficult question of whether to apply federal or state law in interpreting the Agreement's "Governing Law; Consent to Personal Jurisdiction" clause is not relevant beyond the motion to change venue. No other conflicts are apparent that would impact convenience in this case. Colorado law likely will govern Plaintiff's wrongful termination claim whether it is heard by this court or transferred under section 1404(a) to the Northern District of Georgia. *See Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990). Furthermore, since the "Governing Law; Consent to Personal Jurisdiction" clause appears to be valid, Georgia law likely will govern Defendant's counterclaim. *See CS-Lakeview at Gwinnett, Inc. v. Simon Prop. Group, Inc.*, 659 S.E.2d 359, 361 (Ga. 2008) ("The law of the jurisdiction chosen by parties to a contract to govern their contractual rights will be enforced unless application of the chosen law would be contrary to the public policy or prejudicial to the interests of this state.").

Since Plaintiff's claim and Defendant's counterclaim will be decided under Colorado law and Georgia law respectively, no advantage exists in either Colorado or Georgia with respect to having a local court determine questions of law. Therefore, both of the choice-of-law factors do not militate in favor of transfer. If anything, the Tenth Circuit's statement in the choice-of-law context that breach of contract claims involve relatively simple legal issues, would favor the District of Colorado. *See Scheidt*, 956 F.2d at 966.

Finally, Defendant has not raised concerns regarding the remaining *Texas Gulf Sulfur* factors: the relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; or any other considerations of a practical nature that make a trial easy, expeditious, and economical.

In summary, most of the individual *Texas Gulf Sulphur* factors do not militate strongly either for or against transfer. There are those, however that do weigh in favor of this court, as there are those that weigh in favor of the Northern District of Georgia. However, viewed in their totality the factors do not demonstrate an overall preference for either forum. The court finds that transfer of this case would result in no more than shifting the normal expenses and burdens of a trial from one party to the other. *See Hirsch v. Zavaras*, 920 F. Supp. 148, 151 (D. Colo. 1996). Therefore, Defendant has failed in its task to prove that despite the deference given to Plaintiff's choice of forum, the District of Colorado is sufficiently inconvenient to require transfer of this case.

### d.    *The Interest of Justice*

Although the interest of justice consideration is integrated into the *Texas Gulf Sulphur* factors, courts sometimes undertake an independent analysis of this criterion. *See, e.g.*, *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1544–45 (10th Cir. 1996). This is an amorphous test with no clear guidelines, allowing a court to avoid injustice in the name of convenience. *See, e.g.*, *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988) (referring to "those public interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of the 'interest of justice'"). Although Defendant makes sweeping

statements about the interest of justice, it presents no articulable argument as to why the interest of justice require transfer. (*See* Def.'s Br. at 8, 10.) Defendant does argue that it no longer has a strong connection to the state of Colorado, and that the actions complained of by Plaintiff occurred outside of the state. However, Plaintiff's employment, the subject of his claim, took place in Colorado, as did all of the events surrounding the alleged breach of contract that is the subject of Defendant's counterclaim. Therefore, the interest of justice does not require transfer of this case.

**2.      *Conclusion***

Due in part to the fact-specific nature of a section 1404(a) change of venue analysis, no precedent bound this court to a particular resolution. Instead, having given due regard to the several factors evaluating the inconvenience posed by the present forum and the interest of justice, the court concludes that a change of venue in the current case would be inappropriate. Based on the foregoing it is therefore ORDERED that:

1. DEFENDANT's motion to change venue (#13) is DENIED.

Dated this 9th day of September, 2008

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge